IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 21-cv-03264-RM-KLM

KIM MCKEON,

    Plaintiff,

v.

BANK OF AMERICA,
AARAN TRANSPORT, LLC,
NUR ABDI, and
DAVID BAILEY,

    Defendants.

---

**ORDER**

---

This personal injury action is before the Court on a Motion for Summary Judgment (ECF No. 109) by Defendants Aaran Transport, LLC and Abdi (the "Aaran Defendants"), seeking dismissal of the claims against them. Defendants Bank of America and Bailey (the "BOA Defendants") and Plaintiff have filed Responses to the Motion (ECF Nos. 118, 120), and Plaintiff has filed Replies (ECF No. 130, 133). The Aaron Defendants have also filed a Motion to Exclude (ECF No. 132), seeking to exclude certain testimony of Plaintiff's retained expert, and that Motion has been briefed as well (ECF Nos. 146, 150). Both Motions are denied for the reasons below.

**I.    BACKGROUND**

This case arises from a chain of vehicle crashes on a snowy day along a downgrade section of Interstate 70 west of the Eisenhower Tunnel. (ECF No. 131, ¶ 3.) On March 3, 2019,

Defendant Abdi was driving a semi-truck owned by Defendant Aaran Transport, LLC down the highway in the left lane when he struck a Mazda CX-5.  (*Id.* at ¶¶ 1, 2, 6.)  After spinning out of control, the Mazda struck a Nissan Pathfinder traveling in the center lane.  (*Id.* at ¶¶ 7.)  The Pathfinder spun out of control and rolled.  (*Id.* at ¶ 10.)  The semi-truck, Mazda, Pathfinder and two other vehicles all ended up along the ditch on the right side of the highway.  (*Id.* at ¶¶ 19.)  The Pathfinder came to rest on its side.  (*Id.* at ¶ 10.)

At the time of the initial accident, Plaintiff was a backseat passenger in a Nissan Rogue being driven by her brother-in-law, John Kowba, in the center lane.  (*Id.* at ¶ 13.)  After witnessing the semi-truck passing on the left and hitting the Mazda, Mr. Kowba pulled over on the right, about even with the Pathfinder.  (*Id.* at ¶¶ 15, 16, 18.)  Plaintiff and her sister, Ms. Kowba, exited the Rogue on the passenger side and began trying to determine if the occupants of the Pathfinder were okay.  (*Id.* at ¶¶ 22, 25.)  One of the occupants had already exited the vehicle, and Ms. Kowba helped another, a young girl, climb out the window.  (*Id.* at ¶¶ 26, 27.)  A third occupant had blood on his head and face and was initially standing up in the Pathfinder through one of the smashed windows, but he was able to exit without help.  (*Id.* at ¶¶ 31, 38, 39.)

In the meantime, Defendant Bailey, an employee of Defendant Bank of America, was approaching the scene in an Audi A4, driving in the center lane.[1]  (*Id.* at ¶¶ 47, 48.)  As he changed into the right lane to avoid a slow-moving semi-truck, he began sliding.  (*Id.* at ¶ 49.)  The Audi slid off the road and struck Plaintiff as she was standing next to the Pathfinder, causing her serious injury.  (*Id.* at ¶¶ 50, 99, 105, 106.)  Defendant Bailey was cited for careless driving causing bodily harm.  (*Id.* at ¶ 63.)

---

[1] Plaintiff contends Defendant Bailey was acting in the scope of his employment at the time of the accident.  (ECF No. 1, ¶ 65.)

Plaintiff filed her Complaint in December 2021. (ECF No. 1.) In addition to claims against the BOA Defendants, she asserts claims against Defendant Abdi for negligence and negligence per se and against Defendant Aaran Transport, LLC for vicarious liability, negligent entrustment, negligent hiring and retention, and negligent training and supervision.

## II.     LEGAL STANDARDS

### A.     Summary Judgment

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in its favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"The substantive law of the case determines which facts are material." *United States v. Simmons*, 129 F.3d 1386, 1388 (10th Cir. 1997). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a

jury or is so one-sided that one party must prevail as a matter of law. *Id.* at 251-52; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

### B. Expert Testimony

"The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The Court has the duty to act as a gatekeeper by ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand. *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019).

If the Court determines that an expert is sufficiently qualified to render an opinion, it must then determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology. *See Nacchio*, 555 F.3d at 1241. In doing so, the Court considers (1) whether the testimony is based on sufficient facts or data, (2) whether it is the product of reliable principles and methods, and (3) whether the expert has reliably applied the principles and methods to the facts of the case. *See* Fed. R. Evid. 702(b)-(d).

If the evidence is sufficiently reliable, the Court then evaluates whether the proposed evidence or testimony is sufficiently relevant that it will assist the jury in understanding the evidence or determining a fact at issue. *See Norris v. Baxter Healthcare Corp.*, 397 F.3d 878,

4

884 (10th Cir. 2005).  The Court has discretion in how it performs its gatekeeper function. *See Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

### III. ANALYSIS

#### A. Summary Judgment Motion

Plaintiff's claims against the Aaran Defendants are predicated on alleged negligent driving by Defendant Abdi.  In their Motion for Summary Judgment, they assert that undisputed facts show they owed no duty of care to Plaintiff because she cannot satisfy the requirements of the rescue doctrine under Colorado law.  They also argue that the actions of Defendant Bailey were an intervening or superseding cause of her injuries.  On the current record, however, the Court is not persuaded that these Defendants are entitled to summary judgment on either basis.

##### 1. Rescue Doctrine

"The rescue doctrine . . . is one way the law acknowledges the human instinct to help those in need, even at the risk of one's own safety." *Garcia v. Colo. Cab Co. LLC*, 467 P.3d 302, 303 (Colo. 2020).  It "ensures that negligent actors who put others at risk may be held liable when their negligence injures a third-party rescuer" who: (1) intended to aid or rescue a person whom she, (2) reasonably believed was in imminent peril, and (3) acted in such a way that could have reasonably succeeded or did succeed in preventing or alleviating such peril.  *Id.* at 302-03.  Where the controlling facts are undisputed, whether a defendant owes a legal duty to a plaintiff is a question of law for the Court.  *See id.* at 304.

The Aaran Defendants concede there is evidence that "Plaintiff subjectively thought she was engaging in a rescue" (ECF No. 109 at 10); therefore, the first prong of the rescue doctrine is not at issue.

With respect to the second prong, the Aaran Defendants argue that "[t]here is no evidence in the record indicating any of the occupants of the Pathfinder were in imminent peril, seriously injured, and needing any life-saving medical intervention." (*Id.*)  But it is not easy for the Court to take this argument too seriously.  Setting aside the other evidence in the record, the Court finds that the Pathfinder—which had just rolled over and come to a stop on the side of the highway—speaks for itself.  The fact that Plaintiff admits she did not know that anyone was injured when she arrived at the scene does not change the analysis.  Though it is clearly possible for a person to emerge unscathed from such an accident, that does not make it unreasonable for a person in Plaintiff's position to believe that someone might be in imminent peril.  *Cf. Garcia*, 467 P.3d at 306 ("[A] car crash alone [is not] evidence that the crash's victim is in imminent peril when that victim is engaging in casual conversaion.").  Despite the absence of anyone screaming, these were not circumstances presenting an "obviously benign situation[]," and because "the presence or absence of danger is not always certain[,] a person may genuinely and reasonably believe that a third party is in imminent peril even when that is not the case." *Id.*  Accordingly, the Aaran Defendants have not shown that Plaintiff could not have reasonably believed an occupant of the Pathfinder was in imminent peril.

With respect to the third prong, the Aaran Defendants argue that Plaintiff did nothing to effectuate a rescue.  However, the utility of Plaintiff's conduct must be considered consistently with the rescue doctrine's purpose, which is to encourage the instinct to help, and in the context that she was struck by the Audi within minutes of exiting the Rogue.  *See id.* at 305-06.  Although the intent to rescue alone is insufficient establish utility, a plaintiff's action has some utility if it "stand[s] a chance at substantially helping the person(s) in peril." *Id.* at 306.  In other words, "a plaintiff's conduct must be reasonably calculated to prevent or alleviate the imminent

6

peril." *Id.* Under the circumstances, the Court has little trouble concluding that Plaintiff's actions were reasonably calculated to help. For one thing, there is no evidence Plaintiff was aware there were no other occupants still inside the Pathfinder. For another, the fact that three occupants emerged (with or without assistance) does not mean that they would not require medical attention. For a third, even if the occupants escaped with only minor injuries, they were still apparently stranded on the side of the highway in the snow and may not have had the means to get themselves to safety. Given that the occupants of the Pathfinder faced different types of peril—not all of it necessarily medical—the Aaran Defendants' emphasis on Plaintiff's lack of medical training is misplaced. Moreover, the Court finds this case does not present circumstances where the plaintiff was merely investigating the scene of an accident but lacked the intent to aid or rescue. *See id.* at 306. Accordingly, the Court finds there is evidence to support this prong of the rescue doctrine as well, and summary judgment is not warranted.

        2.     <u>Intervening or Superseding Cause</u>

To prevail on her claims against the Aaran Defendants, Plaintiff must show both that but for Defendant Abdi's negligence, she would not have been injured, and that her injury was a reasonably foreseeable consequence of Defendant Abdi's negligence. *See Deines v. Atlas Energy Servs., LLC*, 484 P.3d 798, 801-02 (Colo. App. 2021). "An intervening cause that breaks the chain of causation from the original negligent act becomes the proximate cause of the plaintiff's injury, relieving the wrongdoer of liability. . . . But an intervening act of a third party—even an intentionally tortious or criminal act—does not immunize the defendant from liability if the intervening act is itself reasonably foreseeable." *Id.* at 802 (citation omitted). "Causation in fact is typically a question for the jury, unless the undisputed facts would allow reasonable minds to draw just one inference from them." *Rocky Mountain Planned Parenthood,*

7

*Inc. v. Wagner*, 467 P.3d 287, 292 (Colo. 2020); *see also Deines*, 484 P.3d at 803 ("[G]enerally, it is the jurors' job to consider all the facts and circumstances, and to use their common sense to make the call regarding the foreseeability of an intervening act.").

The Aaran Defendants contend that Defendant Bailey's negligent driving was the predominant and substantial cause of Plaintiff's injuries and that his actions were independent of the initial accident.  However, even assuming the Aaran Defendants are correct, the Court is not persuaded that a reasonable jury could not reach a different conclusion.  Regardless of whether Defendant Bailey was aware of the initial accident, a logical inference from the undisputed facts is that the initial accident caused the traffic slow-down that necessitated Defendant Bailey's sudden lane change, which led to his losing control of the Audi.  In that sense, this case is similar to *Deines*, where an oil spill on the highway stopped traffic and a subsequent crash occurred. 484 P.3d at 801.  The *Deines* court concluded that "whether defendants should have reasonably foreseen that if they caused an oil spill on a highway at night, an accident relatively close in time and place to the spill might result" was a jury question.  *Id.* at 806; *see id.* at 850 ("The competing case law simply confirms for us that, in most instances, reasonable people could differ on the question of whether an intervening act is foreseeable.  Hence, our strong preference for allowing the jury to decide the question.").

Nor is the Court persuaded that Plaintiff's decision to approach the Pathfinder was unforeseeable.  The *Deines* court cited with approval *Banjai v. Arruda*, 799 P.2d 441, 443 (Colo. App. 1990), for the proposition that "a reasonable jury, considering all the circumstances, including the weather conditions, could have found that the defendants' negligence was a cause of the plaintiff's injuries because each of the intervening acts—the plaintiff's decision to stop and a subsequent accident—were reasonably foreseeable."  484 P.3d at 804.  Though Plaintiff

8

was not a police officer and Banjai was, the Court does not find this to be a material distinction for present purposes, and drawing such a distinction would undermine the policy aims behind the rescue doctrine. Thus, the Court rejects the notion that Plaintiff's decision to render aid to the occupants of the Pathfinder was, as a matter of law, an intervening cause that precludes her claims against the Aaran Defendants.

The Court also rejects the argument that, as a matter of law, the lapse of a few minutes between the initial accident and Plaintiff being struck breaks the chain of causation here. While temporal and spatial proximity are properly taken into consideration by a jury, *see Deines*, 484 P.3d at 803, the facts underlying those considerations do not necessarily lead to an inference in the Aaran Defendants' favor.

Therefore, the Court concludes the Aaran Defendants are not entitled to summary judgment on the issue of whether Defendant Abdi's negligence proximately caused Plaintiff's injury.

      B.    **Motion to Exclude**

In their Motion to Exclude, the Aaran Defendants assert that the Court should exclude—both in its consideration of their Motion for Summary Judgment and at trial—certain opinion testimony by Plaintiff's retained expert, Guy Barbera, an accident reconstruction engineer. Specifically, the Aaran Defendants seek to exclude Mr. Barbera's opinion that Defendant Abdi was a cause of Plaintiff's injuries. In his report, Mr. Barbera describes why he believes Defendant Abdi's negligence caused the initial accident and states that Defendant Abdi "contributed to the injuries [Plaintiff] sustained when she was struck by the Audi." (ECF No. 132-2 at 8.)

9

The Aaran Defendants are not seeking to exclude Mr. Barbera's opinions that Defendant Abdi's negligence caused the initial accident or that Defendant Bailey's unsafe driving caused Plaintiff's injuries. Moreover, the Court finds there can be no genuine dispute that the initial accident also was *a cause* of Plaintiff's injuries, at least in the sense that she would not have been on the side of the highway and in the Audi's path had it not occurred. Thus, it is not improper to draw the inference that by causing the initial accident, Defendant Abdi contributed to the injuries Plaintiff sustained when she was struck by the Audi. To the extent Mr. Barbera's opinions embrace this straightforward aspect of the case, the Court is not inclined to exclude them on the grounds that they are not the proper subject of expert testimony or represent impermissible legal conclusions.[2] "Ultimately, the rejection of expert testimony is the exception rather than the rule." *O'Sullivan v. GEICO Cas. Co.*, 233 F. Supp. 3d 917, 922 (D. Colo. 2017) (quotation omitted). To the extent such testimony may be cumulative, the Court will consider appropriate objections at trial.

The Aaran Defendants' contention that allowing Mr. Barbera to present his opinions would usurp the jury's role also lacks merit. Mr. Barbera nowhere contends that Plaintiff's injuries were entirely caused by Defendant Abdi's negligence. Rather, it is his opinion that Defendant Bailey also acted negligently and caused Plaintiff's injuries. The Aaran Defendants have not identified anything in Mr. Barbera's reports that would preclude a jury from making its own assessment as to how to apportion liability under the circumstances presented.

---

[2] From the Court's perspective, the fact that Mr. Barbera does not define causation in his reports does not strengthen the Aaran Defendants' position because the role of explaining what the law is to the jury is properly left to the Court.

## IV. CONCLUSION

Accordingly, the Court DENIES both Motions (ECF Nos. 109, 132).

DATED this 22nd day of June, 2023.

                                                BY THE COURT:

                                                _____
                                                RAYMOND P. MOORE
                                                Senior United States District Judge